UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIREZA HASHEMI,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, *et al.*,<br><br>　　　　　　Respondents. | Case No. 2:25-cv-10335-HDV-SR<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION [8]** |

I.  **INTRODUCTION**

Petitioner Alireza Hashemi lawfully entered the United States in 2008. After he was convicted of various crimes—likely associated with his mental health struggles—he was ordered removed to Iran. He was released on an order of supervision in 2017. In the past eight years, Petitioner has worked on improving his mental health and stabilizing his life.

When he appeared for an ICE check-in in October 2025, Petitioner was detained. He is currently in custody at the Adelanto Detention Facility, and his mental health is suffering significantly. Before the Court is his habeas petition and his request for a preliminary injunction ordering him immediately released from custody. *See* Petition [Dkt. 1]; Motion [Dkt. 8]; Opposition [Dkt. 10]; Reply [Dkt. 11]; Hearing [Dkt. 13].

While the government points to a paper trail suggesting it complied with the requirements governing the revocation of release under 8 C.F.R. §§ 241.4(l) and 241.13(i), the Court finds that this appearance of process was a sham. Petitioner was never given meaningful notice of the reasons for the revocation of his release, nor was he provided a meaningful opportunity to respond to those reasons. Indeed, a member of his legal team—who was physically present at the ICE check-in—was expressly excluded while Petitioner was given the farcical "interview" at the now infamous B-18.

The Motion is granted. Respondent is ordered to release Petitioner from custody forthwith.

II.  **BACKGROUND**

A.  **Factual Background**

Petitioner Alireza Hashemi is a native and citizen of Iran. Declaration of Christopher Jenson ("Jenson Decl.") [Dkt. 10-1] ¶ 3; Declaration of Alireza Hashemi ("First Hashemi Decl.") [Dkt. 8-2] ¶ 1. He was admitted to the United States as a legal permanent resident in July 2008, when he was seventeen. Declaration of E. Katherine Tinto ("Tinto Decl.") [Dkt. 8-3] ¶ 4; Jenson Decl. ¶ 4.

In August 2013, after he began experiencing mental health difficulties, Hashemi was convicted of assault, driving under the influence, and shoplifting. Tinto Decl. ¶ 5; Jenson Decl. ¶¶ 5–7; First Hashemi Decl. ¶ 2. Immigration and Customs Enforcement ("ICE") subsequently initiated removal proceedings against him. Tinto Decl. ¶ 6; Jenson Decl. ¶ 8. In April 2015, his probation was revoked. Tinto Decl. ¶ 5; Jenson Decl. ¶ 9; First Hashemi Decl. ¶ 2. He spent a

couple of months in Orange County jail, and was transferred to immigration custody upon his release. Tinto Decl. ¶ 6; Jenson Decl. ¶ 10; First Hashemi Decl. ¶ 2. He remained in immigration custody for almost two years, between December 2015 and August 2017. Tinto Decl. ¶¶ 6–12; Jenson Decl. ¶¶ 10–15.

This period in immigration detention was incredibly difficult for Hashemi. His mental health suffered tremendously, as reflected in the fact that he was transferred between Adelanto Detention Center and Alvarado Parkway Institute, an in-patient acute psychiatric hospital, at least a dozen times. Tinto Decl. ¶¶ 7–10; First Hashemi Decl. ¶¶ 3–4; *see also* Jenson Decl. ¶ 12. He reports being very stressed and anxious, suffering from hallucinations, delusions, and paranoia, and feeling physically uncomfortable in his body and having thoughts of self-harm and suicide. First Hashemi Decl. ¶¶ 3–4; Tinto Decl. ¶ 7. He was eventually diagnosed with schizoaffective disorder-bipolar type. First Hashemi Decl. ¶ 4; Tinto Decl. ¶¶ 8–9; Motion, Ex. 10 [Dkt. 8-10] (discharge summary dated Aug. 28, 2017).

At the same time, Petitioner's immigration case was proceeding. An immigration judge found him mentally incompetent in March 2016. Tinto Decl. ¶ 6. At some point, he applied for asylum and withholding of removal. Jenson Decl. ¶ 11. In December 2016, an immigration judge rejected his asylum and withholding claims and ordered Hashemi removed to Iran. *Id.* Hashemi appealed, but the Board of Immigration Appeals ("BIA") dismissed his appeal in July 2017, rendering him finally removable. *Id.* ¶¶ 13–14; Tinto Decl. ¶ 6.

Following his final order of removal and final discharge from Alvarado Parkway Institute, Petitioner was released from immigration custody on an Order of Supervision in August 2017. Tinto Decl. ¶¶ 6, 9, 11–12; Jenson Decl. ¶¶ 15–15; Motion, Ex. 1 ("2017 Order of Supervision") [Dkt. 8-1].[1]

In the past eight years, Petitioner has worked on improving his mental health and building a life in the United States. He met his now-partner, Brenda Clemente. First Hashemi Decl. ¶ 5;

---

[1] Hashemi's conditions of release included that he "appear in person at the time and place specified, upon each and every request of the agency, for identification and for deportation or removal" and that he "not commit any crimes." 2017 Order of Supervision at 1, 3.

3

Declaration of Brenda Clemente ("Clemente Decl.") [Dkt. 8-5] ¶¶ 1–2. Through the Office of Diversion and Reentry ("ODR") Housing Program, he was assigned to work with The People Concern, who helped him obtain housing and connected him with psychiatric care. Tinto Decl. ¶¶ 13–15; First Hashemi Decl. ¶ 5; Motion, Ex. 8 ("The People Concern Letter") [Dkt. 8-8].[2] He sees a psychiatrist and takes various medications to manage his symptoms. Tinto Decl. ¶¶ 21–24; First Hashemi Decl. ¶ 5; The People Concern Letter ("Mr. Hashemi . . . takes his medication consistently . . . and continues to work towards his treatment goals."); Expert Declaration of Dr. Dhanu Mahesh ("Mahesh Decl.") [Dkt. 8-9] ¶¶ 2, 4;[3] Motion, Ex. 11 ("Mercy LTC and Specialty Pharmacy Records") [Dkt. 8-11]; id., Ex. 12 ("CVS Prescription Records") [Dkt. 8-12]. He has worked at McDonald's and as a driver for Uber. First Hashemi Decl. ¶ 6; Declaration of Mansoureh Hashemzadeh Saraf ("Saraf Decl.") ¶ 9. He is the main financial support for his girlfriend and her two U.S. citizen daughters, paying for their apartment's bills, their food, and their clothes. Clemente Decl. ¶¶ 3, 9; First Hashemi Decl. ¶ 6; Saraf Decl. ¶¶ 6–7, 9, 11. He also acts as a father figure to his girlfriend's daughters and supports his family in other, non-financial ways. Clemente Decl. ¶¶ 6–9, 11–12; Saraf Decl. ¶¶ 6–9, 11; First Hashemi Decl. ¶ 6; see also Motion, Ex. 7 [Dkt. 8-7] (verification of Hashemi's voluntary enrollment in and participation in Parenting Group self-help groups/classes through Developing Opportunities Offering Reentry Solutions).

---

[2] Hashemi's connection with ODR and The People Concern came by way of his arrest and prosecution for a domestic violence-related assault. Tinto Decl. ¶ 13. In July 2018, he pled guilty to a felony violation of California Penal Code § 273.5(a), and was sentenced to 233 days jail and 48 months probation. Id.; Jenson Decl. ¶ 16. But because his public defender noticed, and the prosecutor and court agreed, that Hashemi was struggling with his mental health and needed appropriate case management and treatment, he was placed in the ODR program as part of the terms of his probation. Tinto Decl. ¶ 13. After he successfully completed the ODR program, his felony conviction was reduced to a misdemeanor and dismissed pursuant to California Penal Code § 1203.4. Id. ¶ 14. He continues to receive supportive services from The People Concern. Id.; First Hashemi Decl. ¶ 5; The People Concern Letter.

[3] Dr. Mahesh is a licensed psychiatrist in California, has been treating patients for over 43 years, and has experience in the treatment of anxiety, depression, schizophrenia, schizoaffective disorder, and other serious mental disorders. Mahesh Decl. ¶ 1. The Court finds Dr. Mahesh to be a qualified, credible, and persuasive expert witness, and considers his testimony herein.

   Hashemi has a mixed record of compliance with his conditions of release. He appears to have reported to his regular ICE check-ins through June 2023. 2017 Order of Supervision at 2; Jenson Decl. ¶¶ 17–18. But ICE avers that he failed to report on June 14, 2024, on July 1, 2025, and on July 2, 2025. Jenson Decl. ¶¶ 19–21. Hashemi, on the other hand, maintains that the July 1, 2025 appointment was the first one he had ever missed. First Hashemi Decl. ¶¶ 7–8.[4] In any case, Hashemi subsequently reported to ICE on October 8, 2025. *Id.* ¶ 9; Tinto Decl. ¶ 16; Jenson Decl. ¶ 22. He was accompanied by a law student from the Criminal Justice Clinic at UC Irvine School of Law, explained some of his medical issues, and received a new order of supervision requiring an Alternatives to Detention ("ATD") GPS ankle monitor. Tinto Decl. ¶¶ 1, 3, 16–17; First Hashemi Decl. ¶ 9; Jenson Decl. ¶ 22; *Ex Parte* Application for Temporary Restraining Order ("TRO Application") [Dkt. 5], Ex. 8 ("2025 Order of Supervision") [Dkt. 5-8]. He reported that same day to be fitted with his ankle monitor. Tinto Decl. ¶ 16; First Hashemi Decl. ¶ 9; 2025 Order of Supervision at 2.

   On October 22, 2025, when Petitioner reported again to ICE, his release was revoked and he was detained. Tinto Decl. ¶¶ 18–20; First Hashemi Decl. ¶ 10; Jenson Decl. ¶ 23. As on October 8, Hashemi arrived with a law student from the UC Irvine Criminal Justice Clinic. Tinto Decl. ¶ 18. They arrived at the Federal Building in downtown Los Angeles at approximately 8:00 a.m. *Id.* The law student was instructed to wait outside while Hashemi went inside for his appointment. *Id.* After waiting about five hours, Petitioner was told by an ICE officer that he was being detained. First Hashemi Decl. ¶ 10; Second Declaration of Alireza Hashemi ("Second Hashemi Decl.") [Dkt. 8-4] ¶ 7. He was moved to the detention facility in the basement of the Federal Building, known as B-18. *Id.*; Tinto Decl. ¶ 18. There, he was handed a "Notice of Revocation of Release." Tinto Decl. ¶¶ 19–20; Opposition, Ex. A ("Notice") [Dkt. 10-2] at 1 (listing Petitioner's address as "US DHS/ICE Custody, 300 N. Los Angeles Street, Room B-18"); *id.* at 2 (proof of service time-stamped at 13:00 hrs). The Notice stated, in relevant part:

---

[4] It also appears likely that Hashemi's 2018 conviction reflected a violation of the condition that he not commit any crimes.

5

> [I]t has been determined that you will be kept in [ICE custody] at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case.
>
> ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you.
>
> Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time.

Notice at 1.

Around the same time, the law student went inside the building to ask if Hashemi had been detained, but was not given any definitive answer. Tinto Decl. ¶ 18 (placing this at "approximately five hours" after their 8:00 a.m. arrival). Petitioner was permitted one phone call, which he used to call his girlfriend. First Hashemi Decl. ¶ 10; Tinto Decl. ¶ 18. Brenda subsequently called the law student who had accompanied Hashemi to the appointment; this is how Petitioner's counsel learned that he had been detained. Tinto Decl. ¶ 18.

Then, an ICE officer conducted what they characterized as an "initial informal interview" of Hashemi. *See* Opposition, Ex. B ("Alien Informal Interview") [Dkt. 6-3]. ICE records reflect that Hashemi did not provide any oral response or written statement. *Id.* Hashemi reports that an officer asked him to sign documents but he did not want to sign them because he did not understand them. First Hashemi Decl. ¶ 10. Hashemi asserts that no one told him why he was detained or when or where he would be deported. *Id.* ¶ 11.

Petitioner was detained in B-18 from October 18 to October 28, when he was moved to Adelanto Detention Center, where he is currently detained. Tinto Decl. ¶¶ 2, 18, 25; First Hashemi Decl. ¶ 16; Second Hashemi Decl. ¶ 1.

As might be expected given his mental health history and previous experience in immigration detention, Petitioner is not doing well in detention. He has been given only very sporadic access to only some of the medications he uses to treat his schizoaffective disorder. First Hashemi Decl. ¶¶ 13–16; Second Hashemi Decl. ¶¶ 1–6. He is beginning to suffer serious symptoms—having paranoid thoughts and feeling very scared and anxious. First Hashemi Decl. ¶ 17; Second Hashemi Decl. ¶ 8.

### B. Procedural Background

On October 27, 2025, Hashemi filed a Petition for Writ of Habeas Corpus. Petition.[5] On October 30, he filed an *ex parte* application for a temporary restraining order. TRO Application. Finding that the TRO Application raised substantial questions on the merits, the Court granted it in part, immediately enjoined Respondents from moving Petitioner outside of this District pending further order of the Court, and ordered an expedited briefing schedule for a preliminary injunction. [Dkt. 7]. The Court heard oral argument and took the present Motion for a preliminary injunction under submission on November 14. [Dkt. 13].

### III. LEGAL STANDARD

To prevail on a motion for a preliminary injunction, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest. *Winter v. Nat. Ress. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id*. at 684 (citation omitted). "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id*. (citation omitted).

---

[5] Through his Petition, Hashemi alleges that his detention violates procedural due process and the Administrative Procedure Act ("APA") (because the procedural steps required for revocation were not followed) and substantive due process (because the government has no valid interest in detaining him). Petition ¶¶ 54–81, 104–15. He also argues that the inadequate provision of medical care in detention given his schizoaffective disorder violates substantive due process, the APA, ICE Directive 11063.2, and the Rehabilitation Act. *Id.* ¶¶ 82–103, 116–22.

7

## IV. DISCUSSION

### A. Likelihood of Success

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a)—and the *revocation* of that release.[6] Both sections allow release to be revoked when a noncitizen violates the conditions of their release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1).[7] And both sections establish certain required process for the revocation of release. Upon such revocation, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* §§ 241.4(l)(1), 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* §§ 241.4(l)(3);

---

[6] The parties do not argue that one rather than the other regulation applies here, instead appearing to presume that both do. *See* Motion 9–12, 15 (citing both); Opposition at 4 (same); Reply at 1–2 (same); Alien Informal Interview (same). For this reason, and because the analysis that follows would be the same or very similar under both provisions, the Court does not decide which of the two applies.

[7] Section 241.4(l) also allows revocation "in the exercise of discretion when, in the opinion of the revoking official" certain other conditions are met, and section 241.13(i) also permits revocation "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* §§ 241.4(l)(2), 241.13(i)(2).

8

241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the [noncitizen]'s continued detention pending removal."). "In simpler terms, in order to revoke release, the government must notify the noncitizen of the ***reason*** for the revocation and give them both an ***informal and formal interview***." *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

The Court finds that Petitioner has demonstrated a likelihood of success on his claim that the government did not comply with the process laid out in sections 241.4(l)(1) and 241.13(i)(3).[8] First, Hashemi was never notified of the reasons for revocation of his release. The "Notice of Revocation of Release" that the government served him—*after* they re-detained him—states only that the decision was made "based on a review of your file and/or your personal interview on account of changed circumstances in your case" and "pursuant to 8 CFR 241.13." Notice at 2. Courts in this district, circuit, and across the country have held that such a vague, generic statement is insufficient notice. *See Sarail A. v. Bondi*, No. 25-cv-2144-ECT-JFD, 2025 WL 2533673, at *2, 10 (D. Minn. Sept. 3, 2025) (finding very similar language to be insufficient notice); *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) (discussing exact same language as in Hashemi's Notice); *Esmail v. Noem*, 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025) (finding similar language to be insufficient notice); *Bui v. Warden of Otay Mesa Detention Facility*, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (similar); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025) (similar). This Notice contains no factual allegations specific to Petitioner, even though there are purportedly concrete reasons for revocation that ICE could have laid out. *See* Jenson Decl. ¶¶ 16, 19–21 (describing conviction in July 2018 and failures to report in 2024 and 2025); *cf. M.S.L.*, 2025 WL 2430267, at *11 (revised notice stating that Petitioner violated conditions by failing to report and failing to obtain permission before relocating). "Petitioner must be told *what* circumstances had changed . . . in order to meaningfully respond to the reasons and

---

[8] This claim forms the basis of both Petitioner's procedural due process and APA claims. *See* Motion at 9 n.5; *see also* Petition ¶¶ 54–68, 104–15.

9

1  submit evidence in opposition," as allowed under sections 241.4(l)(i) and 241.13(i)(3). *Sarail A.*,
2  2025 WL 2533673, at *10; *see also Esmail*, 2025 WL 3030590, at *6. This Notice does not do that
3  and thus does not comply with the regulations. This Court is not requiring that a notice of
4  revocation include any particular magic words; but it must provide real, specific, concrete
5  information that a noncitizen could actually respond to.

6      Second, there is no evidence that Hashemi has been afforded a meaningful informal
7  interview. Although the government has submitted a piece of paper titled "Alien Informal
8  Interview," that same paper reflects that Hashemi did not provide any oral response or written
9  statement. Alien Informal Interview at 2. Hashemi states that he did not understand what was
10 happening. First Hashemi Decl. ¶ 10. And, as already noted, because Petitioner was not given the
11 reasons for revocation, he could not have meaningfully responded to them at this alleged informal
12 interview. *See Sarail A.*, 2025 WL 2533673, at *10; *see also Esmail*, 2025 WL 3030590, at *6.

13     The Court is especially troubled in this regard by the fact that Petitioner was not permitted
14 access to his legal team during this process. *See* Tinto Decl. ¶¶ 1, 3, 18–20. While the subsections
15 of the regulations specifically governing the process associated with revocations of release do not
16 discuss the right to counsel, other sections of those same regulations contemplate that the noncitizen
17 might be represented, and that their counsel would be involved in the process. *See* 8 C.F.R.
18 § 241.4(d), (h) ("representative"); *id.* § 241.13(e), (g) ("counsel"). Noncitizens in removal
19 proceedings generally have the right to counsel (at no expense to the government). *See* 8 U.S.C.
20 § 1362; 8 C.F.R. § 292.5(b). Indeed, the government agrees that "all individuals—regardless of
21 immigration status—share in the rights guaranteed by the Fifth Amendments to the Constitution,
22 including the right to have access to a lawyer" and that it is "unlawful to prevent people from having
23 access to lawyers who can help them in immigration court." *Vasquez Perdomo v. Noem*, No. 2:25-
24 cv-05605-MEMF-SP, 2025 WL 3192939, at *1 & n.2 (C.D. Cal. Nov. 13, 2025) (noting that "both
25 sides"—which included present Respondents Kristi Noem, Pam Bondi, Todd Lyons, Ernesto
26 Santacruz Jr., and ICE—"agreed" on the quoted propositions). And the government has not
27 identified any law suggesting that noncitizens do *not* have a right to counsel at the specific
28

proceedings involved in this case—ICE check-ins and informal interviews following revocation of release.

The Ninth Circuit has characterized a noncitizen's right to counsel as "fundamental" and has warned the government "not to treat it casually," and to respect it "in substance as well as in name." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990) (citation omitted). Unfortunately, it appears the government has treated this right casually and violated at least its spirit, if not its letter, in the last several months. Indeed, in another pending case in this district, Judge Frimpong issued a temporary restraining order and then a preliminary injunction against many of the Respondents here after finding that they were partially blocking access to lawyers in B-18, the very same facility where Hashemi was first detained and "interviewed." *Vasquez Perdomo*, 2025 WL 3192939, at *1–2, 4–7, 11 (finding that federal agents denied attorneys entry, blasted their horns to drown out communications, deployed a chemical agent against attorneys, closed B-18 to attorney visitation without notice, insisted that doors to private attorney rooms remain open during legal visitation, denied attorneys access to prospective clients, did not provide detainees access to free and confidential telephone calls with attorneys and legal representatives, and moved detainees from B-18 to other facilities without notice).

In this case, Petitioner was represented. Tinto Decl. ¶¶ 1, 3. He reported to ICE with a member of his legal team, a law student at the UC Irvine Criminal Justice Clinic. Tinto Decl. ¶ 18. The law student was not permitted to enter the building with Petitioner. *Id.* He was therefore not there when Petitioner was detained and moved to B-18. *Id.*; First Hashemi Decl. ¶ 10; Second Hashemi Decl. ¶ 7. He was not there when Petitioner was handed a "Notice of Revocation of Release." Tinto Decl. ¶¶ 18–20; Notice at 2 (proof of service time-stamped at 13:00 hrs). Indeed, as this was happening, the member of Hashemi's legal team was specifically inquiring whether Hashemi had been detained, and was not given a straight answer. Tinto Decl. ¶ 18 (placing this at "approximately five hours" after their 8:00 a.m. arrival). He—who likely had records related to Hashemi's criminal and immigration cases, and almost certainly understood the proceedings better than Hashemi himself—was thus also not there during the "initial informal interview." *See* First Hashemi Decl. ¶ 10 (averring that he did not understand documents that were presented to him to

11

sign); 8 C.F.R. § 241.13(i)(3) ("afford[ing] [noncitizens] an opportunity to *respond* to the reasons for revocation," including an opportunity to "submit any *evidence* or information that he . . . believes shows . . . that he . . . has not violated the order of supervision" (emphasis added)).

The government's failure to provide Petitioner a *meaningful* notice of revocation and informal interview is in clear violation of the requirements of sections 241.4(l)(1) and 241.13(i)(3). A growing number of courts—including this one—have unequivocally found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release. *See Delkash*, 2025 WL 2683988, at *5–6 (collecting cases). "These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Id.* at *6. "Rules matter. Hearings matter." *Id.* at *1.

Petitioner has thus established a likelihood of success on the merits.

**B.     Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* at 995.

These harms are striking—and quite urgent—in this case. Hashemi has explained his uneven access to his psychiatric medication in detention, and his worsening symptoms as a result. First Hashemi Decl. ¶¶ 13–17; Second Hashemi Decl. ¶¶ 1–6, 8. His psychiatrist explains how his symptoms might deteriorate even further if left untreated, especially under the stress of incarceration and without access to his support system—Hashemi could suffer increased anxiety, delusions, paranoia, hallucinations, and bouts of extreme mood swings including manic highs and depressive lows. Mahesh Decl. ¶¶ 3–7. In particular, in addition to his daily pills, Hashemi receives an injection of long-acting medication every three months. *Id.* at 4; First Hashemi Decl. ¶ 12; Tinto

Decl. ¶ 21. He was due for an injection on November 14, 2025, which he has presumably missed due to his ongoing detention. Tinto Decl. ¶¶ 21–22; Mercy LTC and Specialty Pharmacy Records. Additionally, Hashemi's family has articulated the support that he normally provides them and the emotional distress that they are suffering in his absence. *See* Clemente Decl. ¶¶ 8–12 (discussing emotional and financial hardship suffered by her daughters); Saraf Decl. ¶¶ 6–9, 11 (similar).

Accordingly, this factor weighs strongly in favor of granting the Motion.

### C.     Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public have a significant interest in "enforcement of the United States's immigration laws," Opposition at 7, but that includes an interest in "upholding procedural protections against unlawful detention," *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *7 (N.D. Cal. July 24, 2025) (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct.").

### V.     CONCLUSION

For the reasons stated herein, Petitioner's Motion is granted. Respondents are hereby ordered to immediately release Petitioner from their custody. Respondents are further barred from re-detaining Petitioner unless he receives process as required under 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3) and the Due Process Clause of the Fifth Amendment.[9]

---

[9] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay

The parties are further ordered to file, within ten days of this order, a joint report regarding the status of compliance with this order.

Dated: November 19, 2025

_____
Hernán D. Vera
United States District Judge

---

security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).